**Clinton WILLIAMS a/k/a Chester Williams, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 7866.**

District of Columbia Court of Appeals.

Argued Oct. 15, 1974.

Decided May 14, 1975.

Thomas A. Guidoboni, Washington, D. C., appointed by this court, for appellant.

Donald A. Couvillon, Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry, James F. McMullin and Richard S. Vermeire, Asst. U. S. Attys., were on the brief for appellee.

Joel DuBoff, Asst. U. S. Atty., also entered an appearance for appellee.

Before KERN, GALLAGHER and YEAGLEY, Associate Judges.

YEAGLEY, Associate Judge:

Appellant was charged by indictment with grand larceny (D.C.Code 1973, § 22–2201), unauthorized use of a motor vehicle (D.C.Code 1973, § 22–2204), and receiving stolen property (D.C.Code 1973, § 22–2205). At the conclusion of the government's case, appellant's motion for judgment of acquittal was granted as to the felony counts of grand larceny and receiving stolen property, reducing them to misdemeanors, but denied as to the count of unauthorized use of a motor vehicle. Appellant was found guilty by the jury of the remaining felony count and acquitted of the two misdemeanor charges. After sentencing, this appeal followed. Finding no error, we affirm.

The evidence revealed that on May 7, 1973, James E. Williams parked and locked his 1963 Chevrolet automobile in front of his residence. The next morning he discovered it missing and reported the loss to the police. One night later Officers Ralph K. Moore and David Brooks observed the car being driven by appellant. Since it was listed as stolen on a police bulletin, they pulled it over and, when appellant could produce neither a driver's permit nor a registration card, he was arrested. Appellant alleges that the trial court erred in refusing to give an abandonment instruction to the jury and that it erred in permitting the government to impeach appellant's credibility with a prior conviction for a misdemeanor. We find no merit in either of these contentions.

Appellant testified that during the afternoon of May 8, his landlord asked him to move the car because it was blocking the

774

alley. He claimed to have found out from people in the area that the car had been there for some time. Appellant then worked on the car's brakes and later drove to a nearby garage where a master brake cylinder was installed at his expense.

The owner of the car testified that he had left his driver's permit in the opened ash tray beside the steering wheel and that it would have been visible to anyone in the driver's seat. He also said that his registration card was in the glove compartment and that material and equipment related to his trade were in the back of the car. When the police took possession of the vehicle, all of these articles were recovered in the same places where the owner had left them. He also soundly rebutted appellant's testimony as to the alleged dilapidated condition of the car.

Appellant requested a jury instruction that if he in good faith believed that the automobile he was using had been abandoned, he lacked the essential criminal intent required to be convicted of unauthorized use of a vehicle. The court denied this instruction and appellant raises as error this denial.

■■■ Generally, a defendant is entitled to an instruction on his theory of the case if there is evidence to support it and if it would defeat the theory of the prosecution. See, e. g., Bailey v. District of Columbia, D.C.App., 281 A.2d 440 (1971). Little, if any, evidence was offered on abandonment other than appellant's own testimony that he thought the property had been abandoned. It fell far short of what would be required to present a plausible theory that would warrant the giving of the requested instruction. There was no evidence that the owner intended to abandon the car. In Peyton v. United States, D.C.App., 275 A. 2d 229 (1971), this court quoted with approval from Friedman v. United States, 347 F.2d 697, 704 (8th Cir.), cert. denied, 382 U.S. 946, 86 S.Ct. 407, 15 L.Ed.2d 354 (1965), as follows:

"An abandonment must be made to appear affirmatively by the party relying on it, and an intention to abandon will not ordinarily be presumed, and this is particularly true if the conduct of the owner can be explained consistently with a continued claim. Proof of abandonment must be made by the one asserting it by clear, unequivocal and decisive evidence." [Peyton v. United States, supra at 230.]

Denying that he knew the car was stolen or that he stole it himself, appellant testified that this car was "dilapidated in every aspect of the word". He sought to buttress his testimony as to his professed belief that the car was abandoned by reciting how he had abandoned cars of his own, some of which had been in better condition than the subject car.

■■■ What appellant may or may not have done in abandoning cars of his own cannot establish an abandonment by another, since whatever he may have done previously with another car would have no bearing on whether someone else would do the same thing under similar circumstances. Appellant's testimony that he believed the property had been abandoned (thereby claiming mistake) would be relevant to a specific intent offense. 1 Wharton's Criminal Law & Procedure § 157 (Anderson ed. 1957); W. LaFave & A. Scott, Handbook on Criminal Law § 47 at 356 (1972). The mere testimony of the defendant that he mistakenly believed the car had been abandoned is not, per se, a defense. Commonwealth v. Fine, 166 Pa.Super. 109, 70 A.2d 677 (1950); Commonwealth v. Borek, 161 Pa.Super. 200, 54 A. 2d 101 (1947); Wharton's Criminal Law & Procedure supra § 17 at 28; LaFave & Scott, Handbook on Criminal Law, supra at 359.

In order for appellant to establish a defense of mistake of fact in a general intent crime, it must be shown to the satisfaction of the fact finder that the mistake was

both (1) honest and (2) reasonable. Perkins on Criminal Law 939–40 (2d ed. 1970). In the instant case, neither of these criteria is met.

■ Here the only substantiation which appellant could offer for his belief was his own uncorroborated testimony that he had heard from people in the area that the car had been there "for some time" (contrary to the testimony of the victim), and that the police did not say it was stolen when, apparently, they had passed by on patrol. This evidence does not establish justification or a reasonable basis for his belief by "clear, unequivocal and decisive evidence", Peyton v. United States, *supra*, and falls far short of amounting to a plausible theory. To warrant an instruction such as the defendant requested "it is not sufficient that an accused merely claim a belief . . . . A bona fide belief must have some justification—some reasonable basis." Lacking that, a "court is under no duty to instruct that such belief constitutes a valid defense." Smith v. United States, D.C. App., 281 A.2d 438, 439 (1971).

Further, the uncontroverted evidence revealed that the owner's driver's permit was in the ash tray and the owner's tools were in the automobile for the entire time that appellant had the car. Appellant's only excuse that he "didn't look for anything in the automobile" hardly suggests good faith in his theory of abandonment. In light of the evidence the trial court did not err in refusing to give the instruction.

■ Appellant's final argument is that it was error for the trial court to allow the prosecutor to impeach appellant with a prior misdemeanor conviction for carrying a pistol without a license (D.C.Code 1973, § 22–3204). In the District of Columbia a prior conviction of a crime is allowed for impeachment purposes if the crime was punishable by death or imprisonment of more than one year or involved dishonesty or false statement regardless of punishment. D.C.Code 1973, § 14–305. Since the punishment for carrying a pistol without a license is imprisonment for not more than one year, the conviction is not admissible unless the offense involves dishonesty or false statement.

Appellant contends that the offense of carrying a pistol without a license involves neither dishonesty nor false statement and thus should have been declared inadmissible to impeach his credibility. He asserts that the legislative history of D.C.Code 1973, § 14–305, supports his interpretation of the Code.

The section entitled "Competency of Witnesses" in the House of Representatives Committee Report on the District of Columbia Court Reform and Criminal Procedure Act of 1970 [1] states that the amended rule would allow impeachment "by the proof of any misdemeanor involving dishonesty or false statement." [2]

The House Committee clarified the limitation on the use of misdemeanor convictions for impeachment purposes by stating:

It is the intent of your Committee that the offenses which are excluded from use are primarily those of passion and short temper, such as assault.

The offenses which involve dishonesty or false statement and which may be used in the discretion of the cross-examining party include, but are not limited to, any offense involving fraud or intent to defraud, larceny; robbery; rape; false pretenses, forgery, uttering, embezzlement, housebreaking, or burglary; receiving stolen property, sales of narcotic and depressant and stimulant drugs; unauthorized use of a motor vehicle; taking property without right; procuring; or any attempt to commit . . . any of

---

1. D.C.Code 1973, § 22–3204.

2. The constitutionality of this statute was upheld in Dixon v. United States, D.C.App.,

287 A.2d 89, cert. denied, 407 U.S. 926, 92 S.Ct. 2474, 32 L.Ed.2d 813 (1972) and reaffirmed in Davis v. United States, D.C.App., 313 A.2d 884 (1974).

the above offenses. . . . [H.R. Rep.No.91–907, 91st Cong., 2d Sess. 62 (1970).] (Citations omitted.) [3]

In Durant v. United States, D.C.App., 292 A.2d 157 (1972), cert. denied, 409 U.S. 1127, 93 S.Ct. 946, 35 L.Ed.2d 259 (1973), this court was presented with the question whether unlawful possession of narcotics (a misdemeanor) was a criminal offense involving "dishonesty or false statement" within the purview of D.C.Code 1973, § 14–305(b)(1)(B). We held in that case that "the sponsors of the legislation clearly intended that the offenses to be excluded [from the operation of the statute] are primarily those resulting from passion and short temper." 292 A.2d at 160. Hence, after reviewing the legislative history, we ruled that such a conviction could be used to impeach the witness.

Similarly, the offense of carrying a pistol without a license does not result from passion or short temper. Carrying a pistol knowing it is not licensed is more closely related to deception or deceit. We would not consider it a "minor" crime of a "relatively insubstantial nature". We therefore hold that the crime was not meant to be excluded from the operation of the statute and that the trial court properly allowed proof of the prior offense for impeachment purposes.

There being no other grounds asserted, the judgment is

Affirmed.

---

3. The meaning of this Congressional Report was construed in a recent Superior Court memorandum opinion. That opinion, handed down in the case of United States v. Sharpe, Cr. No. 799–74 (April 16, 1974), held that a prior conviction for carrying a dangerous weapon was an offense involving dishonesty - and was not meant to be excluded from the operation of D.C.Code 1973, § 14–305(b)(1) (B). Judge Dyer Justice Taylor, while relying on the legislative history of the subsection, went further and held that carrying a dangerous weapon in violation of the law is not a minor crime of a relatively insubstantial nature. He stated:

> The carrying of a pistol without compliance with the prescribed licensing requirements, or the carrying of a deadly or dangerous weapon in disregard of the statutory prohibition, shows a complete disregard and contempt for the governmental desire to protect its citizenry from the potential risk of death or substantial body injury. A party who shows such disregard for constituted authority in a matter so crucial to society's well-being is likely, in this Court's opinion to show a similar disregard for his responsibility to tell the truth under oath. In short, the Court translates a willingness to engage in such conduct into a willingness to give false testimony. [102 Wash.D.L.Rep. 980 (May 14, 1974).]